IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CYNTHIA IRVIN, LAWRENCE CAMERON, )
ANTONIO JIMENEZ, and CHERISE FUNCHES, )
)
          Plaintiffs, ) Case No.  18 C 2945
)
   v. )
) Judge Robert W. Gettleman
NATIONWIDE CREDIT AND COLLECTION, )
INC., )
)
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Cynthia Irvin, Lawrence Cameron, Antonio Jimenez and Cherise Funches have

brought a consolidated complaint against defendant Nationwide Credit and Collection, Inc.,

alleging that defendant has violated the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C.

§ 1692 et seq.  The parties have filed cross-motions for summary judgment.  For the reasons

that follow, plaintiffs' motion for summary judgment is denied, and defendant's motion for

summary judgment is granted.

## BACKGROUND

Defendant is an Illinois corporation that is engaged in the business of collecting debts.  It

is registered as a collection agency with the Illinois Department of Financial and Professional

Regulation, and as such is a "debt collector" as that term is defined by the FDCPA.

Plaintiffs each had outstanding balances owed to Rush University Medical Group or

Loyola University Hospital.  Each failed to make timely payments on their accounts.  None had

ever contacted the creditor to dispute their accounts or the balance on their accounts.  As a

result, defendant began to make collection efforts, including reporting plaintiffs' accounts to a

credit bureau and sending a total of eight collection notice letters over the course of several

years.   Each of those notices listed defendant's fax number as:   "Fax:   (800) 485-0207."

Plaintiffs each sought the assistance of lawyers Michael Jacob Wood and or Celetha

Chatman of Community Lawyers Group, Ltd. ("CLG").   Attorney Wood or Chatman then sent

several letters (dated March 11, 19, 24, and April 10, 2018) to defendant purporting to dispute

the amounts owed.   Each letter provided as follows:

> Dear Sir or Madame:
>
> The above referenced client is represented by our firm regarding all matters in
> connection with the above referenced debt.   Please direct any future
> communication regarding this account to our office.   This client regrets not being
> able to pay, however, at this time they are insolvent as their monthly expenses
> exceed the amount of income they receive, and the debt reported on the credit
> report is inaccurate.   If their circumstances change we will be in touch.

Despite knowing that defendant's fax number was listed on the collection notices, and

despite having used that number at least 15 times, attorney Wood searched the internet to

discover a different fax number to which to send the "dispute letters."   He found that number

"(630) 528-5010," on the American Collectors Association's ("ACA") website.   The ACA is a

group of debt collectors and collection agencies around the country that attends forums and

discusses industry practices and trends.   Wood, a member of the National Association of

Consumer Advocates, is not a member of ACA and has no ACA login.

It is not entirely clear from the record why plaintiffs' attorneys used this number, but it is

undisputed that defendant did not use the number for collection purposes.   Defendant has

submitted evidence that it believed the number was no longer in service and that it has no record

2

of that number receiving any faxes.   The fax machine, which was located in defendant's main

office was, however, apparently still operable at the time the faxes were sent because Wood has

fax confirmations.[1]   In any event, there is no evidence that any employee of defendant actually

saw any of the faxes sent by CLG.   According to defendant, the first time anyone at defendant

saw the "dispute letters" was after this lawsuit was filed.

Additionally, there is no dispute that defendant maintains policies and procedures for

processing and responding to correspondence it receives from a consumer or attorney disputing a

debt.   CLG knew this when it sent the "dispute letters" because it had previously sent letters to

the fax number provided by defendant and those dispute letters were processed properly.

## DISCUSSION

The parties have filed cross-motions for summary judgment.   Summary judgment is

appropriate if "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(s); Celotex v. Catrett, 477

U.S. 317, 322 (1986).   A moving party can prevail on summary judgment by either pointing to

undisputed facts supported by the record that demonstrate that it is entitled to judgment, or it can

point to an absence of evidence of an essential element of the responding party's claim or

affirmative defense.   Id.   Once a moving party has met its burden, the nonmovant must go

beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial.

See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (1990).

---

[1] Defendant has moved to strike plaintiffs' submission of the fax confirmations as inadmissible
because plaintiff cannot lay a foundation and the documents are not self-authenticating.   The
court need not reach that issue because, even if admissible, the fax confirmations do not help
plaintiffs.

The court does not weigh conflicting evidence or make credibility determinations, but considers the evidence as a whole and draws all inferences in the light most favorable to the nonmoving party. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (186). The nonmoving party, must, however, do more than simply "show there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be some evidence on which the jury could reasonably find for the [nonmoving] party." Anderson, 477 U.S. at 252; see Modrowski v. Pigatto, 712 F.3d 1166, 1167 (7th Cir. 2003) (The court must enter summary judgment against a party that "does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question.")).

Congress enacted the FDCPA "to eliminate abuse of debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA, 559 U.S. 573, 577 (2010). It imposes civil liability on debt collectors for certain prohibited debt collection practices. Id. at 576. The act requires that "[if] a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communications with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. § 1692c(c). The act further provides that a debt collector may not use false or

4

misleading representations in connection with the attempt to collect a debt by "communicating or

threatening to communicate to any person, credit information which is known, or which should

be known to be false, including a failure to communicate that a disputed debt is disputed."   15

U.S.C. § 1692e(8).   The act may be enforced through private lawsuits.   Violations are deemed

to be unfair or deceptive acts or practices under the Federal Trade Commission Act, 15 U.S.C. §

41 et seq.   A debt collector that "acts with actual knowledge or knowledge fairly implied on the

basis of objective circumstances that such act is prohibited under the FDCPA and subject to civil

penalties."   Jerman, 559 U.S. at 577.   Successful plaintiffs are entitled to actual damages, costs,

and reasonable attorney's fees.   Statutory damages of up to a $1,000 for individual actions are

also available.   Id.

　　　Plaintiff argues that the undisputed evidence conclusively establishes that defendant

violated 15 U.S.C. § 1692e(8) by continuing to report to a credit reporting agency credit

information about plaintiffs' debts without communicating that the debts were disputed.   To

prevail on this theory plaintiff must, of course, present undisputed evidence that defendant knew

or should have known about the dispute letters.   But plaintiff has no evidence that defendant

knew the debts were disputed.   Even if the court considers the unauthenticated fax

confirmations, they at most show that the faxes sent by attorney Wood were received by the fax

machine.   There is no evidence that anyone at defendant used that machine or viewed the faxes.

Consequently, accepting all of plaintiff's evidence, there is a material fact in dispute that requires

denial of plaintiffs' motion.

　　　Defendant, of course, argues that there is no evidence that it ever received the faxes sent

by attorney Wood and, therefore, was not required to inform the credit agencies that the debts

were disputed.   Defendant has presented evidence that that fax machine in question was not

used for any purpose, and certainly not for receiving credit disputes.   And, as noted already,

there is no evidence that anyone at the defendant actually saw the faxes if, in fact, they were

actually received by the machine.   Defendant's fax log has no record of such receipt.   Although

challenging the admissibility of the fax confirmations, defendant correctly argues that they at

most demonstrate that the fax transmissions were completed, but not that defendants were aware

of the receipt.   The court agrees with defendant and concludes that plaintiffs have no evidence

that defendant was aware the debts were disputed and thus, had no duty to so communicate with

the credit reporting agencies.

In any event, even if the fax confirmations were sufficient to conclude that defendant

received and reasonably should have known of the dispute letters, defendant is correct that any

failure on its part was a result of a bona fide error.   Under § 1692k(c) of the FDCPA:

> A debt collector may not be held liable in any action brought under this
> subchapter if the debt collector shows by a preponderance of the evidence that the
> violation was not intentional and resulted from a bona fide error notwithstanding
> the maintenance of procedures reasonably adapted to avoid such error.

The burden is on defendant to show that:   (1) the presumed violation was not intentional;

(2) the presumed violation resulted from a bona fide error; and (3) it maintained procedures

reasonably adapted to avoid any such error.   Evans v. Portfolio Recovery Assocs., LLC, 889

F.3d 337, 349-50 (7th Cir. 2018).   That defense applies to "errors like clerical or factual

mistakes," Jerman, 559 U.S. at 587, but does not apply to errors based on mistaken interpretation

of the FDCPA.   Id. at 604-05.

6

In the instant case, there is no evidence that anyone at defendant had actual knowledge that plaintiffs were refusing to pay and/or disputing the debts.   Nor is there any doubt that if any error occurred, it was unintentional and bona fide.   There is ample undisputed evidence in the record that defendant had procedures in place that were reasonably adapted to avoid any such error, including providing a fax number to be used by recipients of letters to dispute their debts. Indeed, there is evidence that when plaintiffs' counsel used that fax number, defendant responded promptly and properly.

"The bona fide error defense 'does not require debt collectors to take every conceivable precaution to avoid errors; rather it only requires reasonable precautions.'"   Wise v. Credit Control Services, Inc., 2018 WL 5112983, *7 (N.D. Ill. Oct. 19, 2018) (quoting Cort v. Diversified Collection Servs., Inc., 394 F.3d 530, 539 (7th Cir. 2005)).   And, the Seventh Circuit has noted that "[l]iability would be especially perverse" when "the plaintiff is the principal author of the harm of which she complains."   Ross v. RJM Acquisitions Funding LLC, 480 F.3d 493, 498 (7th Cir. 2007).

In the instant case plaintiffs (more specifically their attorneys) were the "principal author of the harm of which they complain."   Id.   As noted by Judge Alonso in Wise, they had only to send their letters to defendant at the fax number displayed on the collection notices defendant had sent them to get defendant to cease its collection efforts and transmit the required information to the credit reporting agencies.   Thus, even if defendant's continued reporting was an error that technically violated the act, it was the sort of unintentional bona fide "clerical or factual" error that is not actionable.   Jerman, 559 U.S. at 587.

7

Although the FDCPA is well intentioned, the mandatory recovery of attorney's fees to a successful plaintiff has "turned FDCPA cases into a profitable vein of litigation upon which entire firms focus their practices, provided, of course, the firms can keep finding plaintiffs." Berther v. TSYS Total Debt Management, Inc., 2007 WL 1795472, *2 (W.D. Wis. June 19, 2007). Indeed, as the Seventh Circuit has noted, the driving force behind these cases are the attorneys (particularly class action attorneys) and their quest for attorney's fees. Id. (citing Sanders v. Jackson, 209 F.3d 998, 1003-04 (7th Cir. 2000)).

In the instant case, it appears to this court that plaintiffs' attorneys' actions were designed to avoid defendant's procedures reasonably adapted to avoid errors, for the purpose of manufacturing a lawsuit. Despite knowing of the fax number to use, these attorneys intentionally sought out an alternate number. And, this is not the first time these lawyers have attempted this sort of stunt. They made the same "error" in Wise, and Duarte v. Midland Funding LLC, 2019 WL 978495 (N.D. Ill. Feb. 27, 2019), in which Judge Ellis stated "[t]he Court does not condone the actions of Duarte and her counsel and it expects counsel to be more judicious in its pursuit of new FDCPA claims in the future." Again, in Ozmun v. Portfolio Recovery Assocs., LLC, 2019 WL 1430006, *6 (W.D. Tex. Mar. 29, 2019), the court, in assessing attorneys' fees against these same attorneys, stated that there was evidence that "Chatman and Wood are part of a cottage industry of litigants who seek to manufacture lawsuits under the FDCPA in order to secure attorney's fees." (Based on a misleadingly worded dispute letter). Like Judge Ellis, this court does not condone counsels' actions and warns counsel to be more careful in the manner in which they conduct their practice.

8

## CONCLUSION

For the reasons described above, plaintiffs' motion for summary judgment (Doc. 46) is

denied and defendant's motion for summary judgment (Doc. 40) is granted.

**ENTER:**        **September 17, 2019**


**Robert W. Gettleman**
**United States District Judge**

9